UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
HARRY ARTIS,                           : 09 Civ. 9893 (BSJ) (JCF)
                                       :
              Petitioner,              :        REPORT AND
                                       :        RECOMMENDATION
     - against -                       :
                                       :
WILLIAM F. HULIAHN,[1] Supt.,          :
                                       :
              Respondent.              :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

      Harry Artis filed this Petition for a Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2254 on October 8, 2009, six-and-one-half
years after the conviction he challenges became final.    In
supplemental submissions invited by the Court, Mr. Artis asserted
that his long-standing mental illness entitles him to equitable
tolling of the one-year statute of limitations included in the
Antiterrorism and Effective Death Penalty Act of 1996 (the
"AEDPA").   See 28 U.S.C. § 2244(d)(1).   Because Mr. Artis has not
met his burden of demonstrating entitlement to equitable tolling of
sufficient length to render his Petition timely, I recommend that
the Petition be dismissed as time-barred.

_____

      [1] As noted in a previous order, the correct spelling of the
Respondent's last name is "Hulihan."

                              1

Background and Procedural History

On November 8, 2002, while imprisoned for an unrelated conviction, Mr. Artis was arraigned in New York County on charges of first degree rape, burglary, and robbery. (Petition for Writ of Habeas Corpus ("Pet.") at 12, ¶ 9; Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 1-2). The charges arose from an incident on May 2, 1994, when Mr. Artis entered a Manhattan apartment and sexually abused a woman while holding her at knifepoint. (Transcript of Plea Allocution dated Feb. 21, 2003 ("Plea Tr."), attached as Exh. B to Pet., at 5; Resp. Memo. at 1). On February 21, 2003, Mr. Artis pled guilty to sexual abuse in the first degree in violation of New York Penal Law § 130.65. (Plea Tr. at 4-5). A judgment of conviction was entered on March 7, 2003. (Transcript of Sentencing dated March 7, 2003, attached as Exh. B to Declaration of Ashlyn Dannelly dated April 29, 2010 ("Dannelly Decl.")). Mr. Artis did not directly appeal his conviction.

On May 19, 2008, the petitioner collaterally challenged his 2003 conviction in a motion pursuant to New York Criminal Procedure Law ("CPL") §§ 440.10 and 440.20 seeking to vacate the judgment and his sentence. (Motion to Vacate Judgment dated April 24, 2008

("Motion to Vacate"), attached as Exh. C to Dannelly Decl.).[2]  He argued that (1) the trial court lacked jurisdiction to decide the case; (2) he was unable to "adequately, knowingly, intelligently or voluntarily participate" in the plea allocution or sentencing hearing because he suffered from a severe mental disability; and (3) trial counsel was ineffective for failing to inform him of the right to appeal.  (Motion to Vacate at 2-3).  The motion was denied on July 21, 2008.  (Order Denying Motion dated July 21, 2008, attached as Exh. F to Dannelly Decl.).  The Petitioner filed a Motion for Leave to Reargue/Renew the Motion to Vacate on September 22, 2008,[3] which was denied on November 3, 2008.  (Motion to Reargue/Renew dated Sept. 18, 2008 ("Motion to Reargue"), attached as Exh. G to Dannelly Decl.; Order Denying Motion dated Nov. 3, 2008, attached as Exh. H to Dannelly Decl.).  The Appellate Division likewise denied Mr. Artis' February 23, 2009 request for a Certificate of Appealability.  (Application for Certificate of

---

[2] Although the Notice of Motion is dated April 24, 2008, the Affidavit of Service records that Mr. Artis mailed the document on May 19, 2008.  Pursuant to the "prison mailbox rule," the document is deemed filed on that date.  See, e.g., Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending prison mailbox rule to habeas corpus petition).  I will calculate the filing dates of all of Mr. Artis' court filings discussed here according to that rule.

[3] Although the Motion to Reargue is dated September 18, 2008, it was notarized on September 22, 2008.  (See Motion to Reargue at 12).  It cannot, therefore, have been mailed before September 22, 2008.

Appealability dated Feb. 23, 2009 ("COA App."), attached as Exh. I to Dannelly Decl.; Certificate Denying Leave dated Aug. 14, 2009, attached as Exh. K to Dannelly Decl.).

Almost two months later, on October 9, 2009, Mr. Artis filed the instant Petition. He alleges that, while imprisoned for the aforementioned unrelated conviction, he underwent psychiatric treatment and was prescribed a number of medications. (Pet. at 12, ¶ 9; Treatment Needs/Service Level Designation, attached as Exh. C to Pet., at 1-2, 4). Mr. Artis asserts that, pursuant to that treatment, he was administered "a large dosage of psychotropic medication (100 mgs of Thporazine [sic], 10 mgs of Zyprexa and 20 mgs of Paxil tabs)" on the day he entered his guilty plea. (Pet. at 12, ¶ 11). Additionally, he argues that his conviction was "obtained by the use of a coerced confession" (Pet. at 10, ¶ A) and that trial counsel was ineffective for failing to investigate his prior conviction and failing to provide adequate advice regarding the guilty plea at issue (Pet. at 14, ¶¶ 18-20). In response, the respondent asserted, among other arguments, that the Petition is untimely pursuant to Section 2244(d)(1)(A). (Resp. Memo. at 11-13).

I invited Mr. Artis to submit additional information to demonstrate why the Petition should not be dismissed as time-barred. In his subsequent submission, the petitioner indicated

that his mental illness, diagnosed as schizoaffective disorder, and his treatment medications prevent him from "comprehend[ing] or function[ing] normally." (Petitioner's Supplemental Affirmation ("Pet. Supp. Aff.") at 1, 3). He also stated that, because of copying costs, he could not submit all of his psychiatric records. (Pet. Supp. Aff. at 1). Consequently, I ordered the respondent to produce the petitioner's psychiatric records for the period beginning with the commencement of his incarceration. The respondent complied, and thereafter filed a reply to the petitioner's Supplemental Affirmation that argued that Mr. Artis had neither shown that he suffered from a mental illness during the limitations period nor demonstrated that a mental illness prevented him from timely filing a petition for habeas corpus, as required to establish a right to equitable tolling. (Memorandum of Law in Opposition to Petitioner's Equitable Tolling Argument at 4).

Consequently, I appointed counsel for Mr. Artis for the limited purpose of briefing the issue of equitable tolling. I also appointed a licensed psychologist, Dr. Sanford L. Drob, to serve as an expert in support of Mr. Artis. Mr. Artis, through counsel, has now filed a Memorandum in Support of Equitable Tolling of the Statute of Limitations ("Pet. Memo."), and the respondent has replied with a Supplemental Memorandum of Law in Opposition to Petitioner's Equitable Tolling Argument ("Resp. Supp. Memo.").

5

Discussion

    A. <u>AEDPA Statute of Limitations</u>

    The AEDPA imposes a one-year statute of limitations on habeas petitions that runs, "with certain variations [that are irrelevant here], one year from the date on which the petitioner's conviction became final." <u>Ross v. Artuz</u>, 150 F.3d 97, 98 (2d Cir. 1998) (alteration added); <u>see also</u> 28 U.S.C. § 2244(d)(1)(A) (measuring the limitation period from "the date on which the judgment [of conviction by a state court] became final by the conclusion of direct review or the expiration of the time for seeking such review.").

    Mr. Artis' conviction became final on April 7, 2003, upon the expiration of the thirty-day period during which he could have filed a notice of appeal after the judgment of conviction was entered on March 7, 2003 (not including the Sunday on which the thirtieth day fell). CPL § 460.10(1)(a); <u>see also</u> <u>Mason v. Pool</u>, 554 F. Supp. 2d 391, 395-96 (W.D.N.Y. 2008). Therefore, he had until April 7, 2004 to file a federal habeas petition. He did not file the Petition until October 8, 2009, which is 2,376 days (or six years, six months, and one day) after his conviction became final and 2,010 days (or five years, six months, and one day) after the AEDPA's statute of limitations ran. (Pet. at 7, 17). Thus, unless the statute of limitations is tolled, the Petition is

untimely by five-and-a-half years.[4]

     B. <u>Equitable Tolling</u>

        1. <u>Legal Standard</u>

     The Supreme Court has recently confirmed that the AEDPA's statute of limitations is subject to equitable tolling. <u>See</u> <u>Holland v. Florida</u>,__ U.S. __, __, 130 S. Ct. 2549, 2560 (2010) ("Now, like all eleven Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases."); <u>see also</u> <u>Smith v. McGinnis</u>, 208 F.3d 13, 17

---

    [4] The parties disagree about whether the petitioner is entitled to statutory tolling for the period during which his Motion to Vacate, Motion to Reargue, and COA Application were pending. The AEDPA states that the period during which a "properly filed application for State post-conviction or other collateral review" is pending "shall not be counted toward" the limitations period. The respondent asserts that, because the Motion to Vacate was not filed until after the one-year statute of limitations had run, it does not toll the limitations period. (Resp. Supp. Memo. at 10). Mr. Artis appears to argue that, because he is entitled to years of equitable tolling, the AEDPA's statute of limitations had not yet run when he filed his Motion to Vacate, and therefore he is also entitled to statutory tolling. (Pet. Memo. at 3). However, because Mr. Artis has not demonstrated his entitlement to equitable tolling, the statute of limitations had run well before he filed his Motion to Vacate. It cannot, therefore, toll the statute of limitations, because "[t]here was no limitations period to be tolled during the pendency of the [Motion to Vacate]." <u>Pinero v. Greiner</u>, 519 F. Supp. 2d 360, 366 (S.D.N.Y. 2007). Moreover, as Mr. Artis' applications were not "pending" during the limitations period, I need not decide whether the Motion to Vacate, Motion to Reargue, and COA Application were "properly filed" under state law. <u>Fernandez v. Artuz</u>, 402 F.3d 111, 116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state [application] must be both 'properly filed' and 'pending' during the tolling period.").

(2d Cir. 2000).

Equitable tolling is available only in the "rare and exceptional circumstance[]" in which "extraordinary circumstances prevented [the petitioner] from filing his petition on time." Smith, 208 F.3d at 17. Thus, the petitioner requesting equitable tolling must establish "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)).

The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). Indeed, the term "extraordinary" does not refer to whether the claimed obstacle is merely out-of-the-ordinary or unusual, but rather to "'how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" Bolarinwa, 593 F.3d at 231-32 (quoting Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)). Moreover, there must be a "causal relationship between the extraordinary circumstances . . . and the lateness of his filing . . . ." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). That is, the obstacle must be so severe as to have made it impossible for the petitioner to have filed the petition on time.

8

See id.; see also Morales v. United States, 373 F. Supp. 2d 367, 373 (S.D.N.Y. 2005) (denying request for equitable tolling when the petitioner did not "adequately allege that he was unable . . . to file the petition" on time).   It is therefore incumbent upon a petitioner to establish that the extraordinary circumstances existed during the AEDPA's limitations period.   See, e.g., Victoriale v. Burge, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (denying request for equitable tolling because the petitioner "d[id] not demonstrate that he was incapacitated for any time period during the year in which he was to file his petition with the Court"); Morales, 373 F. Supp. 2d at 373 (noting that the petitioner was required to claim that the claimed extraordinary circumstances existed "during the period in which he should have filed his petition"); Allen v. LaClair, No. 07 Civ. 11525, 2009 WL 7029066, at *5 (S.D.N.Y. Nov. 13, 2009) (citing Rios v. Mazzuca, 78 Fed. Appx. 742, 744 (2d Cir. 2003) for proposition that, in order to receive benefit of equitable tolling based on mental illness, petitioner must show mental illness "so severe that [he or she] could not protect his or her legal rights during the statute of limitations period").   In addition to making that showing, a petitioner must also demonstrate that the extraordinary circumstances prevented his filing for a period long enough that the total untolled time does not exceed one year.   See Harper v.

9

Ercole, 648 F.3d 132, 142 (2d Cir. 2011) (holding that the timeliness of a petition subject to equitable tolling "depended on it[s] being [filed] within one year of the total untolled time after [the challenged] conviction became final").

Even where circumstances are sufficiently extraordinary to justify equitable tolling, a petitioner's failure to use reasonable diligence to pursue his claim destroys the causal link between the extraordinary circumstances and the tardiness of the petition. See Valverde, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."). A petitioner must prove that he acted with "reasonable diligence throughout the period he seeks to toll," Smith, 208 F.3d at 17. Thus, extraordinary circumstances do not merit equitable tolling where the petitioner could have, with reasonable diligence, filed within the limitations period, but failed to do so. See id.

As noted above, Mr. Artis claims that his mental illness, for which he has been treated since 1998, and the debilitating side-effects of the medication he has been prescribed to treat his condition, entitle him to equitable tolling. (Pet. Supp. Aff. at

10

1, 3, 8; Pet. Memo. at 6-7).    It is now settled in this Circuit
that mental illness can serve as a ground for equitable tolling.
Bolarinwa, 593 F.3d at 231 (holding that "under the appropriate
circumstances, [mental illness] can" lead to tolling).   However,
"mental illness does not toll a filing deadline per se; determining
whether equitable tolling is warranted in a given situation is a
'highly case-specific inquiry.'"    Id. at 232 (quoting Brown v.
Parkchester South Condos., 287 F.3d 58, 60 (2d Cir. 2002)).   It is
the petitioner's burden to establish the appropriateness of tolling
by offering a "particularized description of how [his] condition
adversely affected [his] capacity to function generally or in
relationship to the pursuit of [his] rights." Boos v. Runyon, 201
F.3d 178, 185 (2d Cir. 2000).

     To toll the limitations period, Mr. Artis must demonstrate
generally    that   his   "particular   disability   constituted   an
'extraordinary circumstance' severely impairing [his] ability to
comply with the filing deadline, despite [his] diligent efforts to
do so." Bolarinwa, 593 F.2d at 232 (remanding to allow trial court
full opportunity to consider if the petitioner's mental illness
excused untimeliness of petition).    As the Ninth Circuit has
recognized, the Bolarinwa court "did not give content to its
severity standard," leaving its development to the district court's
"'highly case-specific inquiry'" on remand. Bills v. Clark, 628

11

F.3d 1092, 1098 (9th Cir. 2010) (quoting <u>Bolarinwa</u>, 593 F.3d at 232). However, courts in this district have held that, in order to be considered an extraordinary circumstance, a petitioner's mental illness must render him "'so incapable of rational thought that he could not appreciate his situation,'" or cause him to "'lack[] the wherewithal to ascertain that he must take legal steps.'" <u>Adames v. Artus</u>, No. 10 Civ. 398, 2011 WL 813627, at *3, *5 (S.D.N.Y. Jan. 20, 2011)(quoting <u>Rios</u>, 78 Fed. Appx. at 744); <u>see also</u> <u>Alaouie v. Ercole</u>, No. 08 Civ. 3277, 2009 WL 2001741, at *3 (S.D.N.Y. July 9, 2009)(applying the same standard); <u>Simpson v. Greene</u>, No. 03 Civ. 6323, 2003 WL 22999489, at *2 (S.D.N.Y. Dec. 22, 2003) (same); <u>cf. Bills</u>, 628 F.3d at 1099-1100 (holding that the impairment must be "so severe that either (a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing").

   2. <u>The Petitioner's Evidence</u>

The respondent provided Mr. Artis' psychiatric records from the New York Office of Mental Health for the period during which the petitioner has been in custody. Dr. Drob examined the petitioner, reviewed his records, and provided a "forensic psychological opinion on the issue of whether Mr. Artis is entitled to equitable tolling of the statute of limitations . . . because

his mental illness prevented him from preparing and filing his <u>pro</u> <u>se</u> habeas petition" by the deadline.   (Forensic Psychological Evaluation dated July 29, 2011 ("Drob Report"), attached as Exhibit to Pet. Memo., at 1).   This evidence fails to meet Mr. Artis' burden of demonstrating his entitlement to equitable tolling.

As Dr. Drob notes, the records show that Mr. Artis has "suffered from a serious and protracted mental disorder at least from 2003 to [2011], and in all likelihood for many years prior to 2003." (Drob Report at 14).  However, they do not establish that Mr. Artis was "'so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain that he must take legal steps,'" <u>Adames</u>, 2011 WL 813627, at *3 (quoting <u>Rios</u>, 78 Fed. Appx. at 744), during the limitations period, which ran from April 7, 2003 to April 7, 2004.  Nor do they demonstrate that he was similarly debilitated for the period between April 7, 2004, and October 8, 2009, the date he filed his Petition.

For example, in 2003 and 2004, while the limitations period was running, Mr. Artis had a mental health level of 3 (on a scale of 6), which indicates that he needed "short term chemotherapy for disorders such as anxiety, moderate depression, or adjustment disorders" or that he "suffer[ed] from a mental disorder which is currently in remission and c[ould] function in a dormitory facility

which has part-time Mental Health staff." (Treatment Needs/Service Level Designation dated Oct. 6, 2003; see also Central New York Psychiatric Center Outpatient Medical Record Manual Chronological Record; Drob Report at 9). In May 2003, Mr. Artis was 100% compliant with his medications -- Thorazine, Zyprexa, Paxil, and Vistaril -- and his psychiatry and therapy appointments, and was "handl[ing]" his conviction and sentence "well."[5] (Treatment Plan Review (Outpatient) dated May 25, 2003). In August 2003, he was still 100% compliant with his appointments, although inconsistent with his medications, and he did "not fit the criteria of a SPMI [Serious and Persistent Mental Illness]." (Treatment Plan Review (Outpatient) dated August 25, 2003). He still "d[id] not fit SPMI criteria" in October 2003. (Progress Notes (Outpatient) dated Oct. 1, 2003; Drob Report at 10). In October and November 2003, records show that his speech was "relevant with normal pace and tone," his mood was "calm," and his thoughts were "clear, logical, and coherent." (Progress Notes (Outpatient) dated Oct. 1, 2003;

---

[5] Mr. Artis has not provided any evidence regarding the side-effects of his medications, other than a printout of a document summarizing information about Thorazine, including its possible side-effects. (Pet. Supp. Aff.). The Drob Report similarly fails to address the possible side-effects of Mr. Artis' medications. He has not, therefore, offered a "particularized description of how [the side-effects] adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

Progress Notes (Outpatient) dated Oct. 29, 2003; Progress Notes (Outpatient) dated Nov. 6, 2003). His "stable" mood and "calm" affect continued into 2004, and he was consistently "[o]riented to person, place, and time," with no evidence of perceptual disturbances. (Progress Notes (Outpatient) dated Jan. 7, 2004; Progress Notes (Outpatient) dated Jan. 28, 2004; Progress Note dated Feb. 12, 2004; Progress Note dated Feb. 25, 2004; Progress Notes (Outpatient) dated March 16, 2004). During the limitations period, Mr. Artis was able to discuss his mental health and reflect on his crimes with mental health professionals. (Drob Report at 10-11). In addition, he had been working at a job in food service, which he "enjoy[ed] very much," for four years. (Treatment Plan Review (Outpatient) dated Dec. 8, 2003; Treatment Plan Review (Outpatient) dated March 8, 2004). This evidence does not establish that Mr. Artis' mental illness made it impossible for him to file his Petition during the limitations period. Indeed, it indicates the opposite -- that Mr. Artis was capable of rational thought and could ascertain that he was required to take legal steps during the relevant period.[6] See Victoriale, 477 F. Supp. 2d at 655 (requiring proof of lack of capacity during the limitations

---

[6] Indeed, as the respondent points out, Mr. Artis "remembers having been advised" in 2003 of his legal rights. (Resp. Supp. Memo. at 13 (citing Drob Report at 3)).

period); <u>Florio v. Cuomo</u>, No. 10 Civ. 0998, 2010 WL 5222123, at *11
(S.D.N.Y. Nov. 16, 2010) (noting that it is "critical to a viable
equitable tolling argument" to show that mental illness prevented
the filing of a petition during the limitations period).

Nor do the records demonstrate that Mr. Artis' was unable to
prepare or file his Petition during the rest of the time he seeks
to toll.  Mr. Artis' condition did degenerate for stretches of time
during the period between April 2004 and October 2009.  On August
12, 2004, for example, his mental health was evaluated to be at
level 1, which indicates the need for treatment for a major mental
disorder.  (Treatment Plan Review (Outpatient) dated August 12,
2004; Drob Report at 13).  He was assessed at mental health level
2 in November 2004 and February 2005.  (Treatment Plan Review
(Outpatient) dated November 16, 2004; Treatment Plan Review
(Outpatient) dated February 7, 2005; Drob Report at 13).  However,
in March, June, and September 2007, he had again reached mental
health level 3.  (Treatment Plan Review (Outpatient) dated Mar. 6,
2007; Treatment Plan Review (Outpatient) dated June 6, 2007;
Treatment Plan Review (Outpatient) dated Sept. 14, 2007; Drob
Report at 13).  Thus, it appears that Mr. Artis' mental illness was
"in remission" for long intervals even after the one-year statute
of limitations had run.

Indeed, the Drob Report confirms that Mr. Artis has not met

16

his burden of demonstrating entitlement to equitable tolling.  Dr. Drob opines that Mr. Artis' mental status has "fluctuated over time, with periods of acute mental illness and periods of relatively intact functioning during which Mr. Artis was likely capable of reflecting upon his behavior and personal/legal situation."  (Drob Report at 15).  He continues:

> While there were certainly periods from 2002-2009 during which Mr. Artis was unable to actively engage with or reflect upon his legal situation, there were also apparently rather extended periods[] of at least several months duration during which records suggest that he was capable of doing so, as revealed in the notes of his mental health counselors.

(Drob Report at 15).  Dr. Drob's opinion is corroborated by the fact that Mr. Artis was able to file his Motion to Vacate in May 2008 and follow it with a Motion to Reargue in September 2008 and an Application for a Certificate of Appealability in February 2009. See, e.g., Bowman v. Walsh, No. 07 CV 3586, 2007 WL 2815711, at *3 (E.D.N.Y. Sept. 25, 2007) ("The fact that petitioner filed a post-conviction motion . . . indicates that he was, at least for a portion of the lengthy period he seeks to toll, capable of pursuing legal remedies.").  This is a period of nine months during which Mr. Artis was obviously capable of filing legal papers challenging his conviction and sentence.

Dr. Drob's ultimate conclusion is that he is unable to "reliably opine whether Mr. Artis' mental illness consistently

prevented him from preparing and filing his <u>pro</u> <u>se</u> habeas petition"
in a timely manner.  (Drob Report at 15).  It is incumbent upon Mr.
Artis to demonstrate that his mental illness made it impossible for
him to file the Petition before the limitations period ran.
<u>Bolarinwa</u>, 593 F.3d at 232 ("The burden of demonstrating the
appropriateness of equitable tolling for mental illness lies with
the plaintiff . . . .").  However, even Mr. Artis' expert is unable
to assert that.  Mr. Artis has therefore failed to clear the high
bar of demonstrating that extraordinary circumstances prevented him
from timely filing his Petition.

        3.   <u>Evidentiary Hearing</u>

     Mr. Artis has requested an evidentiary hearing to "further
develop the record."  (Pet. Memo. at 13).  The decision whether to
hold such a hearing is within the discretion of the district court.
<u>See</u> <u>Bolarinwa</u>, 593 F.2d at 232.

     It is clear that "the district court, in its discretion, may
utilize any of the habeas rules designed to supplement the record
without the necessity of conducting a full-blown evidentiary
hearing."  <u>Valverde</u>, 224 F.3d at 135 (internal quotation marks and
citation omitted).  Indeed, Rule 7 of the Rules Governing Section
2254 Cases in the United States District Courts authorizes
expansion of the record in order to "eliminate . . . unnecessary
hearings," which are "often time-consuming [and] costly."  Rule 7

Governing Section 2254 Cases in the United States District Courts, advisory committee's notes.  Here, the record has been expanded to include all of Mr. Artis' relevant psychiatric records, as well as an expert report by Dr. Drob.  This is precisely the kind of information that would be elicited in an evidentiary hearing.  <u>See</u> <u>Brown</u>, 287 F.3d at 60-61 (finding evidentiary hearing appropriate in order to "secure a more extensive medical history or medical expert testimony pertaining to the period leading up to the date on which filing was required"); <u>Riva v. Ficco</u>, 615 F.3d 35, 42 (1st Cir. 2010) (relying on medical expert testimony elicited during evidentiary hearing in ruling on habeas petitioner's right to equitable tolling).  Indeed, given that Dr. Drob examined and evaluated Mr. Artis in person, taking live testimony regarding the petitioner's mental illness is not likely to supplement meaningfully the psychiatric records and expert report already before the Court.  Moreover, the outcome of this case does not rest on the credibility of witnesses, which is a situation in which an evidentiary hearing may be required.  <u>See</u> Rule 7 Governing Section 2254 Cases in the United States District Courts, advisory committee's notes (noting that when issue depends on witness credibility, expanded record may be "helpful," but evidentiary hearing may still be required) <u>cited in</u> <u>Valverde</u>, 224 F.3d at 135. Rather, I, like the parties, have accepted the facts as presented

19

in the psychiatric records and the Drob Report.  (<u>See</u> Pet. Memo. at

7-13 (relying on the Drob Report); Resp. Supp. Memo. at 4-10, 12-13

(same)).    An  evidentiary  hearing  would  therefore  "serve  no

purpose."  <u>Castillo v. Ercole</u>, No. 07 Civ. 11256, 2009 WL 1492182,

at *5 (S.D.N.Y. May 27, 2009).

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Artis'

request  for  equitable  tolling  be  denied  and  the  Petition  be

dismissed as untimely.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules

72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the

parties  shall  have  fourteen  (14)  days  from  this  date  to  file

written  objections  to  this  Report  and  Recommendation.    Such

objections shall be filed with the Clerk of the Court, with extra

copies delivered to the chambers of the Honorable Barbara S. Jones,

Room 1920, and to the chambers of the undersigned, Room 1960, 500

Pearl Street, New York, New York 10007.  Failure to file timely

objections will preclude appellate review.


Respectfully Submitted,


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE.

Dated: New York, New York
       Jan. 30, 2012

Copies mailed this date to:

Harry Artis
95-A-0059
Mid-State Correctional Facility
P.O. Box 72500
Marcy, New York 13403

Jeffrey G. Pittell, Esq.
Maher & Pittell, LLP
229 East Shore Road
Great Neck, New York 11023

Ashlyn Dannelly, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10027